IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-093-MOC-DCK

| | |
|---|---|
| **INCENTIVE TRAVEL SOLUTIONS, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**NII HOLDINGS, INC.,** )<br>)<br>**Defendant.** )<br>) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "NII Holdings, Inc.'s Motion To Dismiss For Lack Of Personal Jurisdiction Pursuant To Fed. R. Civ. P. 12(b)(2) And For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(b)(6)." (Document No. 8). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u> in part and <u>denied without prejudice</u> in part.

I.  BACKGROUND

On January 10, 2013, Plaintiff Incentive Travel Solutions, LLC ("Plaintiff" or "ITS") filed a "Complaint" (Document No. 1-1) against Defendant NII Holdings, Inc. ("Defendant" or "NII"), in Mecklenburg County Superior Court, Case No. 13-CVS-493. Plaintiff's Complaint asserts claims for: (1) breach of contract; (2) "false and fraudulently made" disclosures; (3) quantum meruit; (4) unfair and deceptive trade practices; (5) and punitive damages. Id.

On February 13, 2013, the case was timely removed to the United States District Court for the Western District of North Carolina. (Document No. 1). Upon removal, Defendant NII

moved to dismiss the claims against it pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Document Nos. 8, 9). Defendant also included the "Affidavit of Alfonso Martinez" (Document No. 9-1) in support of its motion. On April 4, 2013, Plaintiff filed its responses in opposition to "NII Holdings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) and Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)," as well as the "Affidavit of Kevin Devanney." (Document Nos. 14, 15, 16). On April 15, 2013, Defendant filed its reply briefs. (Document Nos. 17, 18). Additionally, Plaintiff filed a "Second Affidavit of Kevin Devanney" (Document No. 19) on April 23, 2013. As such, review of the pending motion and a recommendation for disposition to the presiding district judge are now appropriate.

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v.

National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). Plaintiff however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction . . . " Id.

A federal court exercises personal jurisdiction over a defendant in the manner provided by state law. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997); Fed. R. Civ. P. 4(k)(1)(A)). "When evaluating personal jurisdiction, the trial court must engage in a two-step inquiry: first, the trial court must determine whether a basis for jurisdiction exists under the North Carolina long-arm statute, and second, if so, the trial court must determine whether the assertion of personal jurisdiction over the defendant is consistent with applicable due process standards." Brown v. Ellis, 206 N.C.App. 93, 96 (2010) (quoting Cooper v. Shealy, 140 N.C.App. 729, 734 (2000)).

> The North Carolina long-arm statute provides, *inter alia*, for jurisdiction over any validly-served defendant who "is engaged in substantial activity within [North Carolina]," see, N.C. Gen. Stat. § 1-75.4(1)(d), or whose act or omission gave rise to an action claiming injury to person or property in North Carolina, see N.C. Gen. Stat. § 1-75.4(3). Like those of many other states, North Carolina's long-arm statute is construed to extend jurisdiction over non-resident defendants to the full extent permitted by the Due Process Clause. See Century Data Systems, Inc. v. McDonald, 109 N.C.App. 425, 428 S.E.2d 190, 191 (1993). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such "minimal contacts" with the forum state that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct 154, 90 l.Ed. 95 (1945).

Christian Science Bd. Of Directors of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 214 (4th Cir. 2001); see also, Corporate Fleet Services v. West Van, Inc., 2008 WL 4949129 at *2 (W.D.N.C. Nov. 17, 2008).

Due process precludes a court from asserting jurisdiction over a defendant unless defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).

A motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1960 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A.    Personal Jurisdiction**

When a district court determines personal jurisdiction on the basis of briefs and the allegations in the complaint, without an evidentiary hearing, "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Engineers, Inc. v. Geometric Limited, 561 F.3d 273, 278 (4th Cir. 2009) (citing Combs v. Bakker, 886 F.3d 673, 676 (4th Cir. 1989)); see also, Moseley v. Fillmore Co., Ltd., 725 F.Supp.2d 549 (W.D.N.C. July 16, 2010).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

1. **General Jurisdiction**

The Fourth Circuit has described that the "threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction," and that the "threshold contacts required for general jurisdiction are very substantial, indeed." ESAB Group, 126 F.3d at 623-24 (quoting 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067, at 295-298 (1987)). Here, Defendant argues that there is no basis for general jurisdiction. (Document No. 9, p.5-6). Defendant contends that "[w]hat business NII conducts, it conducts from its offices in Virginia, Latin America, or one of the places where it conducts its incentive award tours. . . . NII conducts no business activities in North Carolina." (Document No. 9, p.7).

In opposition to Defendant's motion to dismiss, Plaintiff asserts that Defendant's six year relationship with Plaintiff creates a substantial, and/or continuous and systematic contact, with North Carolina:

> ITS and NII have actively been engaged in business together since late 2006/early 2007. At that time NII solicited ITS at ITS' offices in North Carolina to act as their travel service provider for two sales incentive trips to Rome which were schedule for 2008. (Devanney Affidavit ¶¶ 3-4). NII and ITS later entered into contracts for incentive award trips for 2009, 2010, 2011 and 2012 to the Bahamas, Paris, Barcelona and London, respectively. At least a portion of the contracts were prepared by ITS and entered into in the State of North Carolina (Devanney Affidavit ¶ 18).

(Document No. 14, p.3).

2. **Specific Jurisdiction**

Specific Jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. Int'l Shoe Co., 326 U.S. at 319. However, to "justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the

forum state must have been so substantial that they amount to a surrogate presence and thus render the sovereignty just." Consulting Engineers, 561 F.3d at 277-78 (quoting ESAB Group, 126 F.3d at 623).

The Supreme Court has held that a minimum-contacts jurisdictional analysis "focuses at the threshold solely on the defendant's purposeful connection to the forum." Burger King, 471 U.S. at 481-482. Additionally, "[t]he finding of an ongoing relationship, as opposed to a single transaction, weighs towards an assertion of personal jurisdiction." WLC, LLC v. Watkins, 454 F.Supp.2d 426, 438-439 (M.D.N.C. Sept. 13, 2006).

Defendant argues that it did not purposefully direct any activities to North Carolina:

> The instant litigation has not resulted from alleged injuries arising out of or relating to any activities of NII in North Carolina, of which there were none. (Aff. ¶ 15). ITS's claims do not arise from or relate to any alleged contacts with North Carolina. (*See* Compl.) Rather, ITS's claims arise from activities elsewhere, and the relevant activities were directed toward Las Vegas and London, were based on dealings with NII located in Virginia, and were under a contract providing for the application of Virginia law.

(Document No. 9, p.9) (citing Document No. 9-1).

Defendant also argues that for the Court to exercise such jurisdiction over NIS would offend traditional notions of fair play and substantial justice:

> NII has no minimum contacts sufficient for this Court to exert personal jurisdiction over it. Placing the burden on NII to litigate in North Carolina when it has no meaningful contact with the forum is fundamentally unfair and violates due process. None of NII's activities give rise to a reasonable expectation that it could be sued in the state of North Carolina. NII is a Delaware Corporation with its offices in Virginia and doing business in Latin America.

(Document No. 9, pp.10-11) (citing Document No. 9-1).

Lastly, Defendant argues that "jurisdiction over NII would hardly serve any interest of North Carolina. While ITS is a resident of North Carolina, the contract calls for the application of Virginia law and related to travel in London, England." (Document No. 9, p.11).

Plaintiff contends that the "Affidavit of Alfonso Martinez" (Document No. 9-1) "fails to inform the Court of the entire relationship between the Plaintiff and the Defendant." (Document No. 14, p.3). Plaintiff argues that the parties have "been regularly and continuously and actively engaged in business for years. NII has availed itself of the labor and services provided by ITS primarily in North Carolina." (Document No. 14, p.4).

As to purposeful availment, Plaintiff alleges that "[w]hen NII solicited ITS' business in 2006, NII 'purposefully directed' its activities to ITS, a North Carolina citizen." (Document No. 14, p.3). Plaintiff argues that NII:

> purposefully directed its original solicitation to a North Carolina citizen, later carried on an exclusive, labor intensive, large budget relationship with that North Carolina citizen for over six (6) years and this litigation results from injuries that arose out of or were related to the final months of those activities and therefore minimum contacts are likely to be found.

(Document No. 14, p.4).

The undersigned has also considered the "Affidavit of Kevin Devaney" (Document No. 15), and the "Second Affidavit of Kevin Devaney" (Document No. 19), regarding Plaintiff's "minimum contacts" and "purposeful availment" arguments. See <u>IMO Industries, Inc.</u>, 3:05-CV-420-MU, 2006 WL 3780422 at *1 ("the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction . . ."). Notably, Kevin Devanney's affidavit memorialized numerous business interactions and agreements between 2006 and 2012:

> The vast majority of work that ITS performed with regard to the contracts beginning with the Rome 2008 contract through the work performed for the Las Vegas trip was done at ITS' corporate office in North Carolina. I estimate that not less that ninety percent (90%) of the work that ITS did for each of the events for NII was done in North Carolina. ITS expended thousands of hours at its North Carolina offices in procuring, coordinating, scheduling, and implementing each of the various travel award trips, which included website design; reservations for hotels, restaurants and outings; design and printing of promotional materials and programs of events. ITS employed two (2) individuals which dealt <u>only</u> with the NII trips. NII and ITS have exchanged thousands of e-mails between the company's respective offices in Virginia and North Carolina. Officials and employees have spoken on the telephone for many hours. Further, NII has paid ITS over $10,000,000.00 in fees and expenses beginning with the 2008 Rome trip.

(Document No. 15, p.3).

In short, Plaintiff alleges substantial support for Defendant's "purposeful connection(s)" to North Carolina: "hours" of telephone conversations occurred between NII's Virginia office and ITS's Charlotte office; "thousands" of emails were exchanged between ITS and NII; "not less than 90% of the work that ITS did for each of the events for NII was done in North Carolina"; agreements were made relating to a 2007 trip to Rome, Italy, a 2009 trip to Paradise Island, Bahamas, a 2010 trip to Paris, France, a 2011 trip to Barcelona Spain, and a 2012 trip to London, England; and NII paid over "$10,000,000.00" in fees and expenses to ITS between 2006 and 2012. (Document No. 15, p.3). The undersigned finds that the ongoing interactions between NII and ITS support a finding that minimum contacts exist to connect Defendant to North Carolina.

Kevin Devanney's affidavit alleges that several agreements or contracts were made between NII and ITS from March 2007 to 2012. (Document No. 15). A contract "with an out-of state party alone" cannot "automatically establish sufficient minimum contacts in the other

9

party's home forum." Burger King, 471 U.S. at 478. "[A] contract can constitute a 'contact' for purposes of a due process analysis." Id.  The facts here, viewed in the light most favorable to Plaintiff, indicate the existence of an on-going six year, financial business relationship, involving multiple contracts and continuous communication between the parties. (Document Nos. 14, 15, 19).

Another decision by this court is instructive in this case:

> For purposes of both the long-arm statute and due process considerations . . . a single contract executed in North Carolina or to be performed in North Carolina may be a sufficient minimal contact upon which to base in personam jurisdiction. But furthermore, the Defendant by its own admission made numerous phone calls and fax transmissions into North Carolina in relation to the contract.

Capstar Corp. v. Pristine Industries, Inc., 768 F.Supp 518, 524 (W.D.N.C. June 26, 1991); see also, Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc., 933 F.Supp. 507, 511 (M.D.N.C. April 26, 1996).

The undersigned finds Defendant's arguments against substantial contacts and purposeful availment unpersuasive. For example, Defendant argues that it had "no meaningful contact with the forum." (Document No. 9, p.10). The undersigned, however, finds "meaningful contact" between NII and ITS in light of their six (6) year relationship, during which NII paid $10,000,00.00 to ITS in North Carolina for its services. (Document No. 15, p.3); (Document No. 14, p.3).

Next, Defendant argues that Mr. Devanney's statement that "NII personally contacted him at ITS office in Charlotte, North Carolina," is not true because "no agent of NII . . . entered the State of North Carolina for any purpose relating to ITS." (Document No. 17, p.4). The

undersigned finds this argument unavailing in light of the alleged "thousands" of phone calls and emails. (Document No. 14, 15, 19).

"[J]urisdiction cannot be avoided merely because the defendant did not physically enter the forum state." See Burger King, 471 U.S. at 477. NII's lack of physical presence in North Carolina does not trump the possibility of NII being hauled to court in North Carolina. Moreover, while the parties may present conflicting accounts of their relationship, as discussed above, the undersigned finds that Plaintiff's affidavits support its arguments for jurisdiction. (Document Nos. 14, 15, 19).

The undersigned recognizes that the contracts between Plaintiff and Defendant state that "[t]his Consulting Agreement shall be governed by the laws of the Commonwealth of Virginia without regard to its choice of law rules." The Fourth Circuit has held that "the inclusion of the choice of law clause is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that." Consulting Engineers, 561 F.3d at 281; see also, Burger King, 471 U.S. at 482. While the undersigned acknowledges that Plaintiff signed several contracts with a Virginia choice of law provision, Defendant's ongoing and numerous contacts with North Carolina suggest that it "purposefully availed [NII] of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958). Additionally, the undersigned does not find that the alleged inconvenience to NII of travel from Virginia to North Carolina is unduly burdensome. (Document No. 10, p.9).

Drawing the most favorable inferences for the existence of jurisdiction for Plaintiff, the undersigned finds the Court's exercise of personal jurisdiction over this Defendant is appropriate. See Combs, 886 F.2d at 676. Long arm jurisdiction can be satisfied "in any action

11

that arises out of a promise, made anywhere to plaintiff or to some party for plaintiff's benefit, by the defendant . . . to pay for services to be performed in this State by the Plaintiff." N.C. Gen. Stat. § 1-75.4(5)(a). The evidence presented indicates that not only one contract but multiple service contracts were created between NII and ITS to be performed by ITS in Charlotte, North Carolina. Furthermore, the ongoing relationship and repeated contacts over a significant period of time support the existence of the required minimal contacts between NII and the forum. See Capstar, 768 F.Supp. at 524. The undersigned believes that sufficient minimal contacts have occurred between NII and the forum to satisfy both the long arm statute and due process considerations. As such, the undersigned will recommend that the motion to dismiss pursuant to Rule 12(b)(2) be denied.

**B.      Sufficiency of Complaint**

   **1.   Claim for Fraud**

In North Carolina, when alleging a fraud claim, Plaintiff must establish: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Synovus Bank v. Karp, 887 F.Supp.2d 677, 686 (W.D.N.C. 2012); see also, McCauley v. Hospira, Inc. et. Al., 75 UCC Rep.Serv.2d 224 (M.D.N.C. 2011) (quoting Wilson v. Dryvit Sys., Inc., 206 F.Supp.2d 749, 755 (E.D.N.C. 2002)). Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The Fourth Circuit has held that the "circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained hereby." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013); see Harrison v.

12

Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice Procedure: Civil § 1297, at 590 (2d ed. 1990)).

Defendant asserts that Plaintiff's "Complaint" fails to allege facts or statements to support a claim for fraud. (Document No. 10, pp.5-6). Specifically, Defendant claims that Plaintiff's "Complaint" is devoid of the specific allegations required by Rule 9(b). (Document No. 10, p.6). Defendant further argues that Plaintiff's statements regarding "[m]ere failure to perform a provision of a contract does not rise to the level of fraud." Id.

Plaintiff contends that the "elements of fraud are adequately pled to inform NII of the allegations," and that "Plaintiff's Complaint specifically alleges facts in order to support a fraud claim." (Document No. 16, p.3). However, Plaintiff acknowledges that it could not provide the "actual time and place that the false representations were made." (Document No. 16, p.3). Plaintiff acknowledges that:

> At the time of the filing of the Complaint, the Plaintiff did not know and [will] not know until discovery is undertaken, when the Defendant first began to contact the suppliers that the Plaintiff had obtained with regard to completing the Las Vegas project without ITS. If the Court decides to dismiss this claim, Plaintiff requests that it be dismissed with leave to amend its Complaint after discovery may be held to establish the specific dates and times of Defendant's actions.

Id.

The undersigned finds that the Complaint suggests facts to support a claim for fraud. For example, the Complaint states that the parties had previous business engagements, and that ITS and Defendant NII met in Las Vegas to "conduct a site visit" for the 2013 President's Council and Circle of Excellence Trip. (Document No. 1-1, pp.2-3). After these interactions occurred, the Complaint alleges that "Defendant knew and had reason to know that it would not perform the contract as to the 2013 travel incentive program, having such knowledge to disclose such

facts to Plaintiff prior to Plaintiff's providing services to Defendant for 2013 trip." (Document No. 1-1, p.3).

This Court has previously held that for arguments that are not jurisdictional, affidavits cannot be considered without converting the motion into one for summary judgement. Burnette v. Austin Med Inc., 1:11cv52, 2011 WL 1769445 *3 (W.D.N.C. Apr. 14, 2011). Plaintiff's response brief relies on the Affidavit of Kevin Devanney to support ITS's allegations for fraud. (Document No. 16, p.3). The undersigned finds that Plaintiff's reliance on the Affidavit of Kevin Devanney (Document Nos. 15 and 16) is inadequate to sufficiently plead ITS's fraud claim.

The undersigned finds that the Complaint supported by Plaintiff's additional allegations in its affidavits tends to support a claim for fraud. However, the undersigned is not convinced the Complaint alone makes sufficient allegations to survive a 12(b)(6) motion. As such, the undersigned will recommend that Defendant's motion to dismiss the fraud claim (Second Claim for Relief) be denied without prejudice, and Plaintiff be allowed an opportunity to amend its Complaint.

**2. Claim for Unfair and Deceptive Trade Practices**

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act, a plaintiff must establish that (1) defendant "committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001); and see, e.g., Freeman v. Duke Power Co., 114 Fed. Appx. 526, 535 (4th Cir. 2004). "[A]n unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." Southeastern Shelyer Corp. v. BTU, Inc., 154 N.C.App. 321, 330 (2002). "An act is unfair or

deceptive under N.C. Gen. Stat. § 75.1.1 if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." S.N.R. Management Corp., 659 S.E.2d at 448 (quoting Pierce v. Reichard, 163 N.C.App. 294, 301 (2004)).

Defendant argues that Plaintiff did not provide sufficient support to allege an unfair or deceptive trade practices claim. (Document No. 10, p.9). Defendant contends that this claim cannot survive because the Complaint only alleges that a contract was formed, and that "Defendant decided to breach the contract and did not immediately inform Plaintiff of Defendant's alleged decision." (Document No. 10, p.10). Plaintiff asserts that it must only "show that the acts complained of possessed a tendency or capacity to mislead or created the likelihood of deception," and the allegations in the Complaint provide "more than a mere breach of contract." (Document No. 16, p. 4).

The undersigned finds that the Complaint as a whole suggests various ways in which Defendant may have engaged in "immoral, unethical, oppressive, unscrupulous, or substantially injurious ways." N.C. Gen. Stat § 75.1.1. Plaintiff's Fourth Claim, however, fails to specifically provide facts to support that claim. (Document No. 1-1, p.4). Plaintiff does include the following allegations in his Second and Third Claims for Relief:

> Plaintiff is informed and therefore alleges that Defendant knew and had reason to know that it would not perform the contract as to the 2013 travel incentive program, having such knowledge to disclose such facts to Plaintiff prior to Plaintiff providing services . . . [b]eginning in early 2012 and continuing from time to time thereafter, at the request of Defendant NII and with its express knowledge, Plaintiff supplied labor and materials in accordance with the requirements of its contract with regard to services involving the 2013 travel incentive program to Las Vegas, Nevada . . . Defendant NII received and accepted the labor, materials and services furnished by Plaintiff for its use and benefit, but has not fully paid or otherwise compensated Plaintiff for same . . . Defendant benefited from the labor, materials and services furnished . . . Plaintiff supplied the labor, materials, and services to

15

> Defendant, Plaintiff reasonably expected to be paid for the same . . . <u>Defendant now claims that the parties do not have a contract</u> for the 2013 incentive program. The reasonable fair market value of the labor, materials and survives supplied by Plaintiff . . . is an amount to be determined at trial but which is in excess of $10,000.00.

(Document 1-1, p.6-7)(emphasis added).

Plaintiff's allegations that Defendant <u>knew</u> that it would not perform the contract, but "<u>received and accepted</u> the labor, materials and services furnished by Plaintiff for its use and benefit," without paying ITS, tends to support claims of "immoral, unethical or substantially injurious" acts. <u>Id.</u>; <u>S.N.R. Management Corp.</u>, 659 S.E.2d at 448.

Also, the "Affidavit of Kevin Devanney" states that "[i]n 2011, ITS was invited to a charity event held by NII," and at the event "ITS was recognized as a top supplier and was one of only five suppliers seated at the main table with the then CEO of NII." (Document No. 15, p.3). At a separate event in London in 2012, the charity event was referenced when "Alan Straus, a senior Vice President for NII" informed Mr. Devanney that "since ITS was handling the 2013 award event for NII, that [ITS] should consider increasing their contribution to NII's charity." (Document No. 19, p.2). As a result of the conversation, ITS increased its donation from $2,500.00 to $10,000.00. <u>Id.</u>

As discussed above in relation to Plaintiff's fraud claim, a 12(b)(6) motion is only to be reviewed based on the sufficiency of the information pled in the Complaint. <u>Scott v. Family Dollar Stores, Inc.</u>, 2:08CV540, 2012 WL 113657 *3 (W.D.N.C. Jan. 13, 2012; <u>Burnette</u>, 2011 WL 1769445 *3 (affidavits cannot be considered). As such, the undersigned recommends that Plaintiff be allowed to amend its Complaint to more adequately support its claims, and that Defendant's motion to dismiss the unfair and deceptive trade practices claim (Third Claim for Relief) be denied without prejudice.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "NII Holdings, Inc.'s Motion To Dismiss For Lack Of Personal Jurisdiction Pursuant To Fed. R. Civ. P. 12(b)(2) And For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(b)(6)" (Document No. 8), be **DENIED** pursuant to Fed. R. Civ. P. 12(b)(2); and be **DENIED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that Plaintiff be allowed to file an Amended Complaint.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 2, 2013

David C. Keesler
United States Magistrate Judge